IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Crystal N. Chapman, | ) | C/A No.1:10-3052-DCN-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This appeal from a dismissal of a claim for social security benefits based on res judicata is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security ("Commissioner") refusing her request to reopen her previously denied claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), pursuant to Titles II and XVI of the Social Security Act ("the Act"), respectively, 42 U.S.C. §§ 401–33, 1381–83.[1] The Commissioner seeks dismissal of this action, alleging the court lacks the authority to review the decision of the Administrative Law Judge ("ALJ") not to reopen Plaintiff's prior applications because it is not a final decision. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action.

_____

[1]The Commissioner awarded Plaintiff SSI benefits as of October 13, 2006, the date she filed her current applications for benefits. Tr. at 28.

## I.    Relevant Background

### A.    Procedural History

Plaintiff was born February 2, 1983, has a GED, and past relevant work ("PRW") as a utility worker and childcare worker. Tr. at 27, 71. Her eligibility for DIB expired on December 31, 2003. Tr. at 25. Beginning in 1994, she filed several applications prior to filing the applications at issue here. Tr. at 20.[2] On October 28, 2004, Plaintiff filed applications for DIB and SSI, which were denied on May 3, 2005. She did not appeal those denials.[3] *Id.* Plaintiff also filed applications for DIB and SSI on September 19, 2005, which were denied initially on March 7, 2006 and on reconsideration on April 21, 2006. She did not appeal those denials. Tr. at 20–21.

Plaintiff filed her current applications for DIB and SSI on October 13, 2006, alleging disability since January 1, 2002. Tr. at 20, 71–73.[4] These applications were denied initially on December 2, 2006, and on reconsideration on January 11, 2007. Tr. at 65–67 (initial) 59–61 (reconsideration). On August 11, 2008, the ALJ conducted a

---

[2]In his March 29, 2010 decision, the ALJ indicated Plaintiff's June 28, 1994 application was for SSI. Tr. at 20. The Commissioner indicates Plaintiff applied for SSI in 1994. Def.'s Br. at 2, n.1. Plaintiff indicates that application was for DIB, but notes it is not of concern in this appeal. Pl.'s Br. at 4.

[3]Plaintiff indicates her October 28, 2004 applications were denied at the reconsideration level. Pl.'s Br. at 4.

[4]The ALJ, Plaintiff, and the Commissioner indicate Plaintiff filed her current applications on October 13, 2006. *See* Tr. at 20, Pl.'s Br. at 4, Def.'s Br. at 2. The applications in the record are dated October 18, 2006. Tr. at 71–74.

hearing at which Plaintiff appeared. Tr. at 812–47 (hr'g tr.). On October 8, 2008, the ALJ issued an order finding "no basis upon which to reopen the April 21, 2006, reconsideration determinations on the claimant's prior Title II and Title XVI applications." Tr. at 33. He found that those prior determinations were final and binding, and that the prior DIB determination had been issued after Plaintiff's insured status expired and had considered evidence through her insured period. Tr. at 33. The ALJ found Plaintiff was not disabled through December 31, 2003, and denied her October 13, 2006 DIB application. Tr. at 39.

At Plaintiff's request, the Appeals Council reviewed the ALJ's October 8, 2008 decision. Finding it unclear whether the ALJ dismissed Plaintiff's DIB application based on res judicata or denied it on its merits, the Appeals Council vacated the ALJ's October 8, 2008 decision and remanded the matter to him for "consideration of the doctrine of res judicata," among other things. Tr. at 12.

On February 2, 2010, the same ALJ conducted a de novo hearing and issued a partially favorable decision on March 29, 2010. Tr. at 848–75 (hr'g tr.). Tr. at 20–29 (decision). The ALJ found Plaintiff could not perform even the minimal requirements of unskilled sedentary work and was eligible for SSI benefits as of October 13, 2006, the date she filed her most recent application. Tr. at 27–28. The ALJ found no basis to reopen the determinations of Plaintiff's prior DIB or SSI applications. Tr. at 21. He found the prior determinations were final and binding, noting the prior applications had been denied

on May 3, 2005 and April 21, 2006, and both "considered the evidence through the period Plaintiff was last insured." Tr. at 21.

B.     The Administrative Hearing

After remand by the Appeals Council the same ALJ conducted another hearing on February 2, 2010, regarding Plaintiff's October 2006 applications. Tr. at 850–75. He informed Plaintiff and counsel that he did not intend to "rehash the SSI award back in October '06, but only determine whether or not there's enough evidence to justify a finding of disability prior to 12/31 of '03." Tr. at 850. He noted Plaintiff had filed applications in October 2004 and September 2005 that she had not pursued prior to applying again in October 2006. Tr. at 850–51.

The ALJ asked Plaintiff several general questions regarding her healthcare providers, her living situation, and her prior work history. Tr. at 851–55. Plaintiff told the ALJ she had difficulty working at a childcare in 2006 because of a break in her back that hurt through her legs. Tr. at 854–55. In response to a question from the ALJ, Plaintiff said she had filed the 2006 applications for benefits because she stopped working at the child care. Tr. at 855. The ALJ asked Plaintiff if it was fair to state that she had not pursued her September 2005 applications because she had gone to work at the childcare, and that she filed the 2006 applications after that job "didn't work out." *Id.* Plaintiff responded: "That's right, but I didn't know how to go about this. And my mom told me to get a lawyer so I did, and he's helping me to get to where I - -." *Id.* The ALJ then asked

4

whether Plaintiff had her GED, whether she was "intellectually challenged," and whether she could "read and write and understand instructions." Tr. at 855–56. Plaintiff responded that she had gone to school through the ninth grade, and that she had her GED, but that it took her four years to obtain it because she "was like on a seventh grade/fourth grade level." Tr. at 856. Plaintiff told the ALJ it was hard for her to understand what she reads and that she had attended "special classes in school." *Id.* In response to the ALJ's question, Plaintiff said that her husband did not suffer from medical problems. *Id.*

The ALJ asked about Plaintiff's financial situation and asked several follow-up questions regarding her work history. Tr. at 857–58. The ALJ then asked Plaintiff the following:

> Q:   [] And you think based upon the award you go[t] in '08, that it was effective in '06 - - the problems that you were experiencing at that point were the - - some of them at least were - - went back as far as '03. Do you understand that is why we're here today?
>
> A:   Yes, sir.

Tr. at 858.

Plaintiff's counsel then questioned Plaintiff about mental health records she proffered. *See* Tr. at 858–65. Vocational expert ("VE") J. Edgar Brown attended the hearing and was prepared to testify. Tr. at 866. The ALJ indicated he did not plan to ask Dr. Brown any questions, noting he did not plan to change any limitations he placed on Plaintiff's residual functional capacity ("RFC"), but that he would need to determine whether the limitations he found "can reasonably relate back to '03." Tr. at 866–67.

5

Plaintiff's counsel asked the VE hypothetical questions based on an individual with Plaintiff's background and the limitations the ALJ had previously found (fibromyalgia, obstructed sleep apnea, diagnosis of morbid obesity, diabetes and mental impairment) who had to "rest away from her work station for significantly more than an hour." Tr. at 868. In response to questions from the VE, counsel clarified that the individual would need regularly scheduled times for breaks as well as the ability to be away from her work station for more than two hours per day. Tr. at 868–69. Dr. Brown opined that such an individual would not be able to perform any substantial gainful activity ("SGA"). Tr. at 869. The ALJ then asked about the same individual who tried to work eight hours a day and five days a week, but would miss more than three days of work per month. *Id.* Dr. Brown testified that such an individual could not perform SGA. *Id.* The ALJ then modified the hypothetical to consider an individual with the "same education and everything," but to consider a mental impairment, including most probably having "problems with attention to and concentration sufficient enough to frequently interrupt tasks during the work - - in the course of the workday." Tr. at 869–70. Dr. Brown testified that person could not perform SGA. Tr. at 870.

Near the close of the hearing, Plaintiff told the ALJ that her problems had "been going on for a long, long time." Tr. at 871. The ALJ indicated it could be "a problem" trying to go back four years when a claimant does not "follow-up with applications." *Id.*

Plaintiff responded that she "didn't understand the process" of how submitting claims worked or "even understand what disability meant [] - -." *Id*

II.    Discussion

Plaintiff alleges the ALJ erred for the following reasons:

1)    by determining her prior applications should not be reopened;

2)    by improperly discounting the opinion of her treating physicians; and

3)    by finding her disabled as of the date she reapplied for SSI benefits (October 13, 2006), rather than consulting a medical advisor to determine the proper onset-of-disability date or setting an earlier onset date based on record evidence.

The Commissioner seeks dismissal of this appeal, arguing the court does not have jurisdiction to review the ALJ's decision not to reopen Plaintiff's prior applications because it was an unreviewable, non-final decision. The Commissioner does not address Plaintiff's substantive arguments.

A.    The ALJ's Decision

In his March 29, 2010 decision, the ALJ referenced the additional evidence Plaintiff submitted, as well as Plaintiff's February 2, 2010 hearing testimony, and found no reason to reopen the "prior final and binding determination" that found Plaintiff "was not disabled within the meaning of the Social Security Act at any time through December 31, 2003, the date last insured." Tr. at 21–23. He dismissed Plaintiff's request for hearing as to

her DIB claims. Tr. at 23. The ALJ made the following findings of fact and conclusions of

law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2003, but not thereafter. A prior final and binding denial decision has been issued after the date last insured and there is no unadjudicated period for consideration in the current application for disability insurance benefits.

2. The claimant has not engaged in substantial gainful activity since October 13, 2006, the date the application for supplemental security income was filed (20 CFR 416.920(b) and 416.971, *et seq.*).

3. Since October 13, 2006, the claimant has had the following severe impairments: fibromyalgia, chronic fatigue syndrome, degenerative disc disease with pars defect at the L5 level, generalized anxiety disorder, personality disorder, and affective disorder (20 CFR 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).

5. After careful consideration of the entire record, I find that, beginning on October 13, 2006, the claimant's residual functional capacity has been markedly reduced and has precluded performance of even the minimal requirements of unskilled, sedentary work at a substantial gainful level of activity.

6. The claimant is unable to perform any past relevant work (20 CFR 416.965).

7. The claimant was a younger individual age 18–49 on the established disability onset date (20 CFR 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 416.968).

10. Beginning on October 13, 2006, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

11. The claimant has been under a disability, as defined in the Social Security Act, from October 13, 2006, the date of her current application for supplemental security income, continuing through the date of this decision (20 CFR 416.920(g)).

Tr. at 25–28.

B.     Legal Framework

1.     The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following steps: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings; (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. If a decision regarding disability may be made at any step, no further inquiry is

necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*,  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be

affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

Plaintiff argues the ALJ should have reopened her October 28, 2004 applications because she was not mentally competent to perfect an appeal from the Commissioner's May 3, 2005 denial of benefits. Pl.'s Br. at 4 (listing prior applications and noting she seeks to reopen the October 28, 2004 applications).[5] Although she discusses additional issues in her briefs, Plaintiff notes that the issue of reopening the prior applications is central to her appeal. Pl.'s Br. at 4. The Commissioner argues that he followed appropriate procedure in considering whether to reopen Plaintiff's October 28, 2004 applications, and that, because he followed procedure, Plaintiff is not entitled to appeal the ALJ's refusal to reopen her prior applications. Def.'s Br. at 4–8.

The parties generally agree on the procedure the Commissioner is to follow in considering whether to reopen previously-denied, unappealed applications when a claimant claims violation of a constitutional right, such as Plaintiff's claim that she was mentally incompetent to pursue administrative and judicial review of the denial of her prior applications. *See* Pl.'s Br. at 19–23, Def.'s Br. at 4–7, Pl.'s Reply at 1–2. The parties

---

[5]Plaintiff indicates she has abandoned the September 2005 applications because she will prevail if the 2004 applications are reopened. Pl.'s Br. at 4–5. Nonetheless, if the district court accepts the undersigned's recommendation for remand, the ALJ should consider Plaintiff's mental competence during the time for pursuing administrative and appellate remedies after the Commissioner's denials of the both the October 28, 2004 and the September 19, 2005 applications.

12

differ, though, as to whether the ALJ's denial of Plaintiff's request to reopen the prior applications is subject to judicial review. In arguing that jurisdictional issue, the parties diverge on whether the ALJ's February 2, 2010 hearing and his March 29, 2010 decision not to reopen her prior applications followed appropriate procedure and considered the issue of Plaintiff's mental competence.

1.    Procedure for Considering Request to Reopen Prior Application

The Commissioner argues that the refusal to reopen Plaintiff's prior applications for benefits was not a final decision of the Commissioner and, accordingly, is not subject to judicial review. Section 205(g) of the Act permits judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party." 42 U.S.C.§ 405(g).

In *Califano v. Sanders*, 430 U.S. 99 (1977), the Supreme Court rejected a claimant's argument that the Act gives federal courts jurisdiction to review the Commissioner's decision not to reopen claims for benefits. The Court cited to 42 U.S.C. § 405(g), noting that review was limited to a "final decision of the Secretary made after a hearing," and that a claimant's request that a final prior decision could be denied by the Commissioner without a hearing as provided in 42 U.S.C. § 405(b). 430 U.S. at 108. The Court found, however, that constitutional questions are "unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the

decision of such questions," and that the "availability of judicial review is presumed" as to constitutional questions. 430 U.S. at 109.

In *Shrader v. Harris*, 631 F.2d 297, 300 (4th Cir. 1980), the Fourth Circuit discussed *Sanders*, noting that its bar of judicial review for determinations not to reopen claims "is not absolute. Adjudication of constitutional questions remains as an exception to the rule against judicial review." *Id.* (*citing Sanders*, 430 U.S. at 109).

In *Shrader,* the Fourth Circuit considered a claimant's due process challenge based on the Secretary's refusal to reopen a prior application, framing the issue as follows:

> [W]hen mental illness precluded a pro se claimant from understanding how to obtain an evidentiary hearing after ex parte denial of his application for benefits, does the summary dismissal on res judicata grounds of his motion for a hearing with respect to a subsequent application deprive that claimant of property without due process of law?

631 F.2d at 301. The Fourth Circuit found that such an individual would be deprived of due process. *Id.* The court explained that, although Congress provided a claimant had to exercise his right to appeal the Commissioner's ex parte denial of benefits by requesting a de novo evidentiary hearing within 60 days, Congress had not addressed the issue of a mentally ill claimant who could not understand the administrative procedure. *Id.* The Fourth Circuit then held that it would "not attribute to Congress an intent to apply the doctrine of res judicata to deprive such a person of a hearing." *Id.* at 302. The court then found a "substitute safeguard" was available:

> Because the risk of error arises from summary application of the doctrine of res judicata on the basis of an ex parte denial of a mentally ill pro se

14

claimant's prior claim, the Secretary can eliminate this risk by conducting a hearing on the claimant's competence before invoking the doctrine to bar his subsequent claim.

*Id.* The Fourth Circuit discussed the procedure required, found the Commissioner's burden in conducting a hearing would be "relatively light," and stated that the requirement would:

> . . . prohibit the Secretary from summarily invoking the doctrine of res judicata when a claimant presents prima facie proof that mental illness prevented him from understanding the procedure necessary to obtain an evidentiary hearing after the denial of his prior pro se claim. Instead, the Secretary will be obliged to conduct an evidentiary hearing to determine the claimant's mental competency. Only if the claimant is found incompetent need the Secretary afford him an evidentiary hearing on the merits of his claim.

*Id.*

Several years later, the Fourth Circuit found a similar constitutional deprivation could result when the Commissioner refused to reopen the claim of a pro se mentally impaired claimant based on claims of administrative finality. *See Culbertson v. Sec'y of Health and Human Servs.*, 859 F.2d 319, 323–24 (4th Cir. 1988), *Young v. Bowen*, 858 F.2d 951 (4th Cir. 1988). In *Young*, the court stated:

> In the context of social security law, both res judicata and administrative finality accomplish one similar task—they prevent reexamination of the merits of an administrative decision. This may be an acceptable and even salutary result when a claimant has had a full and fair opportunity to establish any statutory entitlement. It offends fundamental fairness, however, to bind a claimant to an adverse ruling who lacks both the mental competency and the legal assistance necessary to contest the initial determination. That is the core of our decision in *Shrader* and it operates with equal force whether the Secretary relies upon res judicata or some other procedural limitation.

858 F.2d at 955.

15

The Commissioner acquiesced in the rulings in *Culbertson* and *Young* in Acquiescence Ruling ("AR") 90-4(4), which applies only in the Fourth Circuit,[6] and recognized the exception to administrative finality in SSR 91-5p. AR 90-4(4) explains how these matters will be handled in the Fourth Circuit and provides, in pertinent part:

> Where an initial or reconsideration determination based on an application filed by or on behalf of a claimant, who had no individual legally responsible for prosecuting the claim (e.g., a parent of a claimant who is a minor, legal guardian, attorney, or other legal representative), has become final (i.e., the 60 day time limit for requesting administrative review has expired) and the claimant presents a prima facie case that mental incompetence prevented him or her from understanding the procedures necessary to contest that determination, SSA will determine whether the claimant actually did not understand the procedures necessary for requesting review of the prior determination. If the adjudicator determines that a prima facie case is sufficiently conclusive to establish that the claimant did not have the mental competence necessary to request review of the prior determination, then he or she will not apply res judicata or administrative finality, but will reopen the prior determination and issue a revised determination. However, if there is a question of the sufficiency of the prima facie case, the adjudicator will hold an evidentiary hearing to determine the claimant's mental competence at the time of the prior determination.
>
> If the adjudicator determines that mental incompetence prevented the claimant from understanding the procedures for requesting administrative review of a determination, he or she will not apply res judicata or administrative finality even if more than four years have elapsed (two years

---

[6]When the Social Security Administration ("SSA") determines a ruling by a United States Court of Appeals conflicts with its interpretation of the Act, it issues an AR describing the court decision, identifying the issues involved, and explaining how SSA will "apply the [court's] holding to claims at all levels of the administrative review process within the applicable circuit." 20 C.F.R. § 404.985(a). AR 90-4(4) discusses a conflict between 20 C.F.R. § 404.988 and the Fourth Circuit's rulings in *Culbertson* and *Young*. "The regulations do not provide that a final determination or decision can be reopened and revised if the claimant can establish that he or she was unrepresented and lacked the mental competence to request administrative review." AR 90-4(4).

in Title XVI cases), but will consider the case on its merits and issue a determination or decision that is subject to further administrative review.

If the adjudicator determines that the claimant was capable of understanding the procedures necessary to request administrative review, he or she will apply the normal rules of res judicata or administrative finality and adjudicate the pending claim, as appropriate.

AR 90-4(4).

SSR 91-5p provides, in pertinent part:

It has always been SSA policy that failure to meet the time limits for requesting review is not automatic grounds for dismissing the appeal and that proper consideration will be given to a claimant who presents evidence that mental incapacity may have prevented him or her from understanding the review process. When a claimant presents evidence that mental incapacity prevented him or her from timely requesting review of an adverse determination, decision, dismissal, or review by a Federal district court, and the claimant had no one legally responsible for prosecuting the claim (e.g., a parent of a claimant who is a minor, legal guardian, attorney, or other legal representative) at the time of the prior administrative action, SSA will determine whether or not good cause exists for extending the time to request review. If the claimant satisfies the substantive criteria, the time limits in the reopening regulations do not apply; so that, regardless of how much time has passed since the prior administrative action, the claimant can establish good cause for extending the deadline to request review of that action.

The claimant will have established mental incapacity for the purpose of establishing good cause when the evidence establishes that he or she lacked the mental capacity to understand the procedures for requesting review.

SSR 91-5p.

2.    Procedure in this Case

Here, there is no dispute that Plaintiff did not pursue her October 28, 2004 or her

September 2005 applications and the Commissioner did not conduct hearings and enter

findings or decisions on those applications. After a hearing regarding Plaintiff's current applications for DIB and SSI, the ALJ issued his decision on March 29, 2010, dismissing Plaintiff's January 23, 2007 request for hearing as to her DIB claims because "[a] prior, binding determination found that [Plaintiff] was not disabled within the meaning of the Social Security Act at any time through December 31, 2003, the date last insured," and he found "no reason to reopen that determination." Tr. at 23. Plaintiff seeks judicial review of that decision.

The Commissioner acknowledges that Plaintiff was not represented by counsel in her prior applications and that there was no other individual who was legally responsible for prosecuting her prior claims. Def.'s Br. at 7. Accordingly, he acknowledges that "[u]nder *Shrader, Culbertson, Young,* AR 90-4(4), and SSR 91-5p, if the Plaintiff presented prima facie proof that a mental impairment prevented her from timely requesting review of the May 2005 decision, the Commissioner was required to conduct a hearing on her competence at the relevant time before invoking the doctrine of administrative finality." Def.'s Br. at 7 (emphasis omitted). The Commissioner does not question whether Plaintiff presented prima facie proof of mental incompetence. Rather, he claims the ALJ conducted the hearing and "subsequently made findings of fact and concluded that Plaintiff had not been mentally incompetent and had not lacked the capacity to pursue further review of her 2004 application at the relevant time." *Id.* (*citing* Tr. at 21–23). The Commissioner then argues that, by holding the evidentiary hearing, the Commissioner

18

satisfied the requirements of AR 90-4(4) and SSR 91-5p. Def.'s Br. at 7 (*citing Long v. Chater*, 52 F.3d 321 (mem.), No. 94-2343, 1995 WL 234291 (4th Cir. Apr. 21, 1995)). He argues that the ALJ properly applied res judicata to deny Plaintiff's prior DIB claim and asks that the court dismiss the request for judicial review because it lacks jurisdiction. *Id.*

In response, Plaintiff argues that the ALJ has not satisfied the requirements of *Shrader, Culbertson, Young,* AR 90-4(4), or SSR 91-5p because (a) he did not conduct a hearing and render a decision regarding her competence to appeal,[7] and (b) even if the ALJ conducted a hearing such as that required by *Shrader*, the results of such a hearing are subject to judicial review. Pl.'s Reply at 2–7. The court considers these points in turn.

> 3.    The ALJ's Hearing and Decision did not Clearly Address Plaintiff's Competence

The Commissioner argues that the ALJ's hearing and decision satisfied due process requirements and made findings of fact concluding Plaintiff had the mental capacity to pursue further review of her 2004 application at the relevant time. Def.'s Br. at 7 (*citing* Tr. at 21–23). The court disagrees.

As Plaintiff points out, the period for which Plaintiff's mental competence is at issue for purposes of affording her due process is the time during which she should have

---

[7]In her initial brief, Plaintiff submitted that the ALJ had conducted the mental competency hearing required by *Shrader* and that, because the ALJ had conducted a hearing and issued a decision, the March 29, 2010 decision was wholly reviewable by the court. Pl.'s Br. at 20–21. The Commissioner responded with his jurisdictional challenge, and Plaintiff replied by alternatively arguing that she had not received the competency hearing or decision to which she was entitled. *See* Pl.'s Reply at 2.

appealed the denials of her prior applications. *See* Pl.'s Br. at 26 (noting critical time period regarding Plaintiff's competence was early May to early June 2005, the 60 days during which she could have appealed the Commissioner's May 3, 2005 denial of her October 28, 2004 applications). Although the ALJ asked a few questions of Plaintiff at the February 2010 hearing that could be construed as inquiring about her mental competence to preserve administrative and appellate remedies for prior applications, he focused the hearing on whether there was sufficient evidence to show Plaintiff was disabled as of December 31, 2003, the date she was last insured. *See* Tr. at 855–56 (ALJ's asking Plaintiff whether she had her GED, whether she was "intellectually challenged," and whether she could "read and write and understand instructions"); *cf.* Tr. at 858 (ALJ's indicating reason for hearing is to determine whether "problems" on which 2008 award of benefits was based "went back as far as" 2003).

Further, the ALJ's March 2010 decision does not include any findings regarding whether Plaintiff had the requisite mental competence to have perfected appeal of her prior applications in May/June 2005. Rather, the decision focuses on whether Plaintiff was disabled prior to the date her coverage ended, December 31, 2003. In finding additional mental health records did not warrant reopening of prior determinations, the ALJ indicated he considered "all newly submitted evidence which could reasonably be related back to the date before the previous final determinations." Tr. at 21. After careful review of the hearing transcript, the decision, and other record evidence, the court cannot determine that

the ALJ's hearing or decision includes findings regarding Plaintiff's competence at the time for appeal of her October 28, 2004 applications.

In addition, although not raised by Plaintiff's counsel here, the SSA's Hearings, Appeals, and Litigation Law Manual ("HALLEX") requires that, when there is evidence a claimant "lacked the mental capacity to timely request review," and "had no one legally responsible for prosecuting the claim," the ALJ "must address and resolve in the current decision the issue of whether the claimant lacked the mental competence to pursue his appeal." HALLEX I-2-4-40, 2005 WL 1870458. HALLEX provides additional instructions applicable in the Fourth Circuit that require an ALJ to first conduct a separate evidentiary hearing and provide a separate decision regarding competence prior to declining to reopen a prior determination:

> NOTE: In the Fourth Circuit, an adjudicator may not decline to find good cause to reopen a final determination or decision on a prior claim without first providing the claimant a separate on-the-record evidentiary hearing and decision on the issue of whether the claimant was mentally competent at the time of the prior determination or decision.

*Id.* (*citing Culbertson*, 859 F.2d 319 and *Young*, 858 F.2d 951). The HALLEX instruction continues, explaining that AR 90-4(4) implements *Culbertson* and *Young* as follows:

> If, after such hearing, the ALJ finds that the claimant was not mentally competent at the time of the final determination or decision on the prior claim, the ALJ must: 1) issue a separate decision on the mental competency issue, and 2) provide the claimant a full hearing and decision on all issues raised by the prior and current claims. The ALJ may not dismiss the request for hearing on the basis of res judicata. If, however, the ALJ finds that the claimant was mentally competent at the time of the final determination or decision on the prior claim, the ALJ must 1) issue a separate decision on the

mental competency issue, and 2) and proceed with action on the request for hearing in the usual manner. The ALJ may dismiss the request for hearing on the basis of res judicata if the conditions for res judicata are met.

*Id.*[8]

The court acknowledges that HALLEX does not automatically have the force of law, so the Commissioner's failure to follow HALLEX § I-2-4-40's instructions does not automatically require reversal or remand. However, because remand is recommended, the undersigned recommends the court direct the Commissioner to follow HALLEX procedure. The undersigned recommends the matter be remanded to the ALJ with instructions to conduct a separate hearing and issue a separate decision regarding whether Plaintiff was mentally competent during the period she would have sought further review of the Commissioner's denial of her prior applications for DIB. The ALJ should then proceed further as instructed in HALLEX I-2-4-40.

_____

[8]HALLEX is available at http://www.ssa.gov/OP Home/hallex. Circuits are split as to whether HALLEX is binding on the Commissioner. The Fourth Circuit has not ruled on the issue. *See Calhoun v. Astrue*, C/A No. 7:08–619, 2010 WL 297823 (W.D. Va. Jan. 15, 2010) (collecting cases regarding circuit split and noting Fourth Circuit has not ruled on issue). In *Way v. Astrue*, ___ F. Supp. 2d __, 1:10-1134-RBH, 2011 WL 1597652 (D.S.C. Apr. 27, 2011), the court found that the Commissioner's failure to follow proffer procedures set forth in HALLEX prejudiced claimant, making remand for compliance with those procedures appropriate. *Cf. Sims v. Astrue*, 6:08–4156–MBS, 2010 WL 619239, * 15–16 (D.S.C. Feb. 18, 2010) (looking to HALLEX in considering Commissioner's argument that mental competency hearing was not required for claimant who failed to timely seek judicial review and remanding with instruction for the Commissioner to follow HALLEX procedure). The *Sims* decision did not discuss whether HALLEX has the effect of law. *Id.*

4.     The Court May Review the Commissioner's Refusal to Reopen Plaintiff's Prior Applications

The Commissioner argues that "the ALJ's holding of the evidentiary hearing was enough to satisfy the requirements of AR 90-4(4) and SSR 91-5p." Def.'s Br. at 7–8 (*citing Long v. Chater*). Claiming the ALJ appropriately applied the doctrine of res judicata and afforded Plaintiff due process, the Commissioner argues the court lacks jurisdiction to review his refusal to reopen Plaintiff's prior applications. Def.'s Br. at 7–8. The undersigned disagrees.

In *Long*, the district court found it lacked jurisdiction to review the denial of a claimant's request to reopen a prior claim based on claimant's argument that she was mentally impaired at the time she would have perfected the appeal. 1995 WL 234291 at *1. The Fourth Circuit noted that the ALJ "conducted a hearing and determined that Long did not satisfy any of the regulatory prerequisites to permit a reopening of the Secretary's earlier denial of benefits. The ALJ also concluded that, contrary to Long's representations, she was mentally competent in 1985 to have sought administrative and judicial review of her claim." *Id.* The Fourth Circuit affirmed, finding that the ALJ satisfied Plaintiff's due process rights in conducting a hearing and making findings concerning the claimant's mental capacity during the relevant appeal window. *Id.* (*citing Young*, 858 F.2d at 955).

The undersigned notes that unpublished Fourth Circuit decisions are not binding. Local Rule 32.1 (4th Cir.). Further, unlike the ALJ's hearing and findings in *Long* described by the Fourth Circuit, the ALJ's hearing and decision here do not clearly address

Plaintiff's mental capacity at the time she should have perfected appeal of her prior applications. Accordingly, *Long* is inapposite. The court must be able to determine whether the ALJ considered and made findings concerning Plaintiff's competence as to the appropriate period of time.

In the published case of *Shrader v. Heckler*, 754 F.2d 142, 144 (4th Cir. 1985) ("*Shrader II*"), the Fourth Circuit considered whether the district court appropriately reviewed the Secretary's decision not to reopen Shrader's prior applications. 754 F.2d at 143–44. After the ruling in *Shrader I*, the Secretary conducted a hearing and found Shrader's mental condition did not prevent him from understanding the administrative process such that his prior applications should have been reopened. *Id.* at 144. Relying on *Califano v. Sanders*, the district court refused to review the Secretary's decision not to reopen the application on the grounds that it lacked jurisdiction to do so. *Id.*

On appeal, the Fourth Circuit affirmed the dismissal, but did not agree that the court lacked jurisdiction. The court affirmed on the grounds that the Secretary's decision not to reopen the prior application was supported by substantial evidence. *Id.* The court discussed *McGowen v. Harris*, 666 F.2d 60, 66 (4th Cir. 1981), which provided that the court's "inherent jurisdiction to determine its own jurisdiction" provided the district court with jurisdiction to determine whether the Secretary properly applied res judicata in denying a claim. 754 F.2d at 144.

The Fourth Circuit then examined 42 U.S.C. § 405(g)'s provision of judicial review for final decisions issued after hearings in conjunction with *Shrader I*'s requirement of considering a claimant's mental competence when ruling on whether to reopen a prior application and found:

> If the Secretary properly applies res judicata without a hearing, the district court has no jurisdiction to conduct further review because the Secretary's denial was properly made without a hearing. However, if in determining the jurisdictional issue the district court finds that the Secretary improperly applied res judicata, the district court has jurisdiction to remand for the hearing due but properly denied.

*Id.* The Fourth Circuit concluded that the district court "had jurisdiction to review, as a condition of its jurisdiction, the Secretary's determination that Shrader's mental condition did not prevent him from understanding the administrative process." *Id.* The court described the review the district court should have undertaken as review of "the Secretary's factual determination of mental capacity." *Id.* In that case, rather than remand to the district court for review of the capacity findings, the Fourth Circuit considered the record evidence and determined substantial evidence supported the Secretary's determination that "Shrader had the mental capacity to understand the hearing and appellate process incident to consideration of his claim," and that no "compelling countervailing evidence was adduced." *Id.*

Based on *Shrader II*, the undersigned is of the opinion that the court has the jurisdiction to consider the Commissioner's decision not to reopen Plaintiff's prior applications. The Commissioner did not question whether Plaintiff had presented prima

facie proof of mental incompetence during the relevant time and argues it appropriately conducted a hearing and issued findings regarding Plaintiff's mental competence before applying res judicata to her claim. Def.'s Br. at 7. As indicated above, clearer discussion and findings are necessary for Plaintiff to receive due process and for the court to have adequate findings to review. Accordingly, the undersigned recommends the matter be remanded to the ALJ with instructions to conduct a separate hearing and issue a separate decision regarding whether Plaintiff was mentally competent at the time of her appeals window to understand the process for seeking review of the denial of her prior applications.

Based on this recommendation, the court will not address Plaintiff's remaining arguments at this time.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action as set out herein.

IT IS SO RECOMMENDED.

September 26, 2011                    Shiva V. Hodges
Florence, South Carolina             United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**